IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| JOHN MCKAY, | ) | |
|       Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No.:  1:10-cv-03695 |
| | ) | |
| PETER DVORAK, et al. | ) | |
| | ) | |
|       Defendants. | ) | Jury Trial Demanded |

## ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

Defendants PETER DVORAK ("Defendant Dvorak") and PINNACLE PROPERTIES

MANAGEMENT GROUP, LLC ("Pinnacle") (collectively, "Defendants"), for their Answer and

Affirmative Defenses to Plaintiff's Complaint, state as follows:

### Introduction

1.      This is an action for securities fraud, along with common law fraud and breach of

contract claims, arising from Dvorak's offering of investment contracts and notes in three

real estate projects and another separate note. Defendants have engaged in securities

fraud in violation of the Securities and Exchange Act of 1934 and the Illinois Securities

Law of 1953, defrauding McKay of nearly $2 million dollars.

**ANSWER:**      Defendants admit that Plaintiff's Complaint purports to bring an action for

securities fraud, common law fraud and breach of contract, and deny each and every allegation

contained in Paragraph 1 of the Complaint.

2.      Dvorak solicited McKay's investment in three separate real estate projects. Dvorak

misrepresented the debt incurred by and value of each of these projects.

**ANSWER:**      Defendants deny each and every allegation contained in Paragraph 2 of the

Complaint.

3.      Dvorak also made repeated and false assurances to McKay about refinancing, valuations of the real estate, appraisals and leasing status of the real estate ventures. He further made misrepresentations regarding the payout dates for McKay's investments. Dvorak took repeated steps to conceal his fraudulent scheme.

**<u>ANSWER:</u>**      Defendants deny each and every allegation contained in Paragraph 3 of the Complaint.

4.      In reliance on Defendants' material misrepresentations and omissions, McKay made repeated purchases of investment contracts from Defendants. McKay has lost nearly $2 million with no explanation from Defendants.

**<u>ANSWER:</u>**      To the extent Paragraph 4 contains purported conclusions of law, it does not contain any allegations to which a response is required. To the extent an answer is required, Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 4 of the Complaint, and therefore deny them.

5.      Accordingly, Plaintiffs seek compensatory damages for all losses caused by Defendants' fraud.

**<u>ANSWER:</u>**      Defendants state that Paragraph 5 of the Complaint contains no allegations to which a response is required.  To the extent an answer is required, Defendants state that Plaintiff's Complaint purports to seek compensatory damages and specifically deny that Plaintiff is entitled to any such damages.

## <u>Jurisdiction and Venue</u>

6.      This action arises in part under Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. §78j(b) and Rule 10b-5 promulgated thereunder, 15 C.F.R. §240.10b-5.

**<u>ANSWER:</u>**      Defendants acknowledge that Plaintiff's complaint purports to bring an action under Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. §78j(b) and Rule

1889654.1                                    2

10b-5 promulgated thereunder, 15 C.F.R. §240. 10b-5, but deny that Plaintiff has valid claims

against Defendants under these statutes.

7.      This Court has subject matter jurisdiction under 28 U.S.C. §1331 pursuant to 15 U.S.C.

        §§77v and 78aa and applicable principles of supplemental jurisdiction pursuant to 28

        U.S.C. §1367. The state law claims in this action are so related to the federal claim that

        they form a part of the same case or controversy.

**ANSWER:**  Defendants admit that this Court has subject matter jurisdiction.  Further answering,

Defendants state that Paragraph 7 of Plaintiff's Complaint contains legal conclusions to which a

response is required.

8.      Venue is proper in this district pursuant to 28 U.S.C. §1391 and 15 U.S.C. §78aa. A

        substantial part of the events or omission giving rise to the claims occurred in this district.

        All Defendants transacted business in this district, including by soliciting investments

        from and directing mailings to Plaintiff in this district. All Defendants are subject to

        personal jurisdiction in this district.

**ANSWER:**      Defendants state that Paragraph 8 contains purported conclusions of law to which

no response is required.  Further answering, to the extent a response may be required, Defendants

are without knowledge or information sufficient to form a belief as to the truth or falsity of the

allegations contained therein, and therefore deny them.

9.      In connection with the acts and conduct alleged in this complaint, Defendants, directly or

        indirectly, used the means and instrumentalities of interstate commerce, including the

        United States mails, and telephone and wire communications systems.

**ANSWER:**    Defendants deny each and every allegation contained in Paragraph 9 of the Complaint except to admit that Defendant Dvorak communicated from time to time with Mr. McKay by mail, telephone and by other communications systems.

### Parties

10.    Plaintiff is an investor who purchased investment contracts in three separate real estate investment ventures from Dvorak. Plaintiff also entered into a note agreement that Dvorak has breached. Plaintiff is a citizen of the State of Illinois and resides in this District.

**ANSWER:**    Defendants are without knowledge or information upon which to form a belief as to the citizenship of Plaintiff, and therefore deny all such allegations contained in Paragraph 10 of the Complaint.  Further answering, Defendants deny the remaining allegations contained in Paragraph 10 of the Complaint, except to admit that Plaintiff holds himself out to be an investor.

11.    Plaintiff's former wife, Amy McKay, also purchased an investment contract from Dvorak. Plaintiff is the assignee and owner of all rights and claims previously owned by Amy McKay arising out of her investment contract purchase.

**ANSWER:**    Defendants deny each an every allegation contained in the first sentence of Paragraph 11.  Defendants are without knowledge or information upon which to form a belief as to the truth or falsity of the allegations contained in the second sentence of Paragraph 11, and therefore deny each and every allegation contained therein.

12.    Defendant Peter Dvorak is a citizen of the State of Indiana and resides in Bloomington, Indiana

**ANSWER:**    Defendants deny each and every allegation contained in Paragraph 12 of the Complaint.

1889654.1                                                        4

13.     Defendant Danville Investment Group, LLC, is an Indiana limited liability company. Danville's principal place of business is Bloomington, Indiana. On information and belief, Danville is managed and controlled by its member, Dvorak.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in the first sentence of Paragraph 13 of the Complaint.   Further answering, Defendants state that Defendant Dvorak was but is no longer the managing member of Danville and deny each and every allegation contained in the second sentence of Paragraph 13 of the Complaint.

14.     Defendant Buchanan Investment Group, LLC, is an Indiana limited liability company. Buchanan's principal place of business is in Fishers, Indiana. On information and belief, Dvorak owns 80% of Buchanan and controls Buchanan.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in the first sentence of Paragraph 14 of the Complaint, and therefore deny them.  Defendants deny each and every allegation contained in the second sentence of Paragraph 14 of the Complaint.

15.     Defendant Historic Roberts, LLC, is an Indiana limited liability company. Roberts' principal place of business is Bloomington, Indiana. On information and belief, Dvorak controls Roberts.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in the first and second sentences of Paragraph 15 of the Complaint.  Defendants deny each and every allegation contained in the third sentence of Paragraph 13 of the Complaint.

16.     Defendant Pinnacle Properties Management Group, LLC, is an Indiana limited liability company. Pinnacle's principal place of business was Bloomington, Indiana. Pinnacle filed articles of dissolution in December 2009. On information and belief, Dvorak controls Pinnacle.

**ANSWER:**     Defendants admit that Pinnacle Properties Management Group, LLC ("Pinnacle") filed articles of dissolution in December, 2009 and that it was an Indiana limited liability company with its principle place of business in Bloomington Indiana.  Further answering, Defendants state that Defendant Dvorak was the managing member of Pinnacle prior to its dissolution but deny each and every allegation contained in the third sentence of Paragraph 16 of the Complaint.

17.     At all relevant times, Defendant Dvorak, in his capacity as principal of Danville, Buchanan and Pinnacle, dominated and controlled Defendants Danville, Buchanan and Pinnacle. Defendants knew of, condoned and benefitted from the violations alleged herein.

**ANSWER:**     Defendants deny each and every allegation contained in Paragraph 17 of the Complaint.

**Factual Background**

**General Fraudulent Scheme**

18.     Defendant Dvorak solicited investments by McKay commencing in or about 2006. Dvorak held himself out as a successful real estate investor and developer. Dvorak represented that his real estate investments always yielded significant positive returns.

**ANSWER:**     Defendants deny each and every allegation contained in the first and third sentences of Paragraph 18 of the Complaint.  Defendants admit the allegations contained in the second sentence of Paragraph 18 of the Complaint.

19.     Dvorak represented that his real estate investment ventures provided concrete pay-out dates when investors could reap significant returns on their investments, profiting from his efforts to enhance the value of the real estate projects. Dvorak represented that the investments would be secured by first mortgages on valuable real estate when in fact both Danville and Hotel Roberts already had first mortgages on them. Dvorak also made representations regarding the capital structure of Buchanan when in fact at the time of McKay's investment, the project was already under water by approximately $1 million.

**ANSWER:**     Defendants deny each and every allegation contained in Paragraph 18 of the Complaint.

20.     Based on these representations, McKay began investing in ventures controlled by Dvorak in the summer of 2006. On or about November 27, 2006, Dvorak sent to McKay a copy of McKay's mortgage which purportedly secured McKay's $1.5 million investment, falsely representing that McKay's mortgage had been recorded by the Vermillion County Recorder of Deeds. The document Dvorak sent to McKay contained a recording stamp of the Vermillion County Recorder of Deeds.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in the first sentence of Paragraph 20 of the Complaint, and therefore deny them.  Defendants deny each and every allegation contained in the second sentence of Paragraph 20 of the Complaint except to admit that Defendant Dvorak sent Plaintiff a copy of the mortgage.  Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in the third sentence of Paragraph 20 because those allegations are based on a document that is not attached to the Complaint, and therefore deny them.

21.     In or about August 2008, McKay began receiving information indicating that Defendants' representations were false. In August 2008, McKay learned that Dvorak had lied to him about McKay's security interest in a mortgage purportedly recorded to protect his investment contract and that Dvorak had provided McKay with a fraudulent and forged recorder of deeds stamp in an effort to dupe McKay into believing that McKay had a first mortgage interest that had been properly recorded to secure his investment.

**ANSWER:**  Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in the third sentence of Paragraph 21, and therefore deny them.

22.     However, Dvorak knew that another bank had a first mortgage interest in the Danville property. Instead of recording McKay's mortgage for McKay, Dvorak apparently simply copied the very same recorder's stamp that appears on the bank's properly recorded first mortgage and affixed it to a copy of McKay's mortgage, falsely representing that McKay's mortgage had been properly recorded, purportedly perfecting McKay's security interest as first mortgagee.

**ANSWER:**  Defendants deny each and every allegation contained in Paragraph 22 of the Complaint.

23.     In fact, Dvorak never recorded nor caused McKay's mortgage to be recorded, let alone recorded as a first mortgage interest. Despite Dvorak's representations that McKay had a secured first mortgage interest, another bank had a first mortgage on the property and that bank was later taken out and replaced by another bank that properly recorded a first mortgage interest.

**ANSWER:**    Defendants deny each and every allegation contained in the first sentence of Paragraph 23 of the Complaint.  Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in the second sentence of Paragraph 23 of the Complaint, and therefore deny them.

24.    Despite further demands of McKay, Defendants have failed to pay the investment contracts as promised and have refused to account for the lost investments.

**ANSWER:**    Defendants deny each and every allegation contained in Paragraph 24 of the Complaint except to admit that McKay made demand for payment and to admit that the notes are in default.

25.    Defendants have engaged in a fraudulent scheme, soliciting and receiving substantial investments, commingling funds for various real estate investments and wiping out the savings of innocent investors, such as Plaintiff.

**ANSWER:**  Defendants deny each and every allegation contained in Paragraph 25 of the Complaint.

## Plaintiff's Investments

**The Danville Investment**

26.    McKay first invested $1 million with Pinnacle and Dvorak, which Dvorak represented was secured by a first mortgage on a property in Danville, Illinois owned by Danville Investment Group. McKay executed a $1 million note on May 30, 2006. Dvorak represented that a first mortgage was recorded on that initial $1 million note.

**ANSWER:**    Defendants deny each and every allegation contained in the first and third sentences of Paragraph 26 of the Complaint, except to admit that Plaintiff invested $1 million with Pinnacle and that the property was owned by Danville.  Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in

the second sentence of Paragraph 26 of the Complaint because those allegations are based on a

document that is not attached to the Complaint, and therefore deny them.

27.     On June 28, 2006, Dvorak solicited another $500,000 investment from McKay for the

        Danville project, replacing the $1 million note with a $1.5 million note. Dvorak

        represented that his attorney would replace the previously recorded $1 million mortgage

        with a new first mortgage covering McKay's $1.5 million investment.

**ANSWER:**     Defendants deny each and every allegation contained in the  Paragraph 27 of the

Complaint.

28.     At all times, Dvorak represented that the $1.5 million investment was secured by a first

        mortgage on the Danville property that Dvorak had recorded. Dvorak sent a copy of the

        recorded mortgage to McKay on or about November 27, 2006.

**ANSWER:**     Defendants deny each and every allegation contained in the first sentence of

Paragraph 28 of the Complaint.  Further answering, Defendants are without knowledge or

information sufficient to form a belief as to when Plaintiff was sent a copy of the mortgage and

deny the remaining allegations contained in Paragraph 28 of the Complaint.

29.     McKay invested the $1.5 million in the Danville project based on the representation that

        the Note was due upon seven days demand notice. In early 2007, Dvorak was unable to

        repay the Note and McKay delayed collection based on Dvorak's representation that he

        was in the process of refinancing the project with several banks and that McKay's

        investment would be repaid by October 27, 2007.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to

the truth or falsity of the allegations contained in Paragraph 29 of the Complaint as to Plaintiffs'

reasons for his actions, and therefore deny all such allegations.  Further answering, Defendants

deny the remaining allegations contained Paragraph 29 of the Complaint except to admit that
Plaintiff invested $1.5 million in the Danville project, that Defendant Dvorak was working with
several banks to refinance the property, and that the notes were not repaid in early 2007.

30.     In January 2008, McKay made a written demand for payment on the notes and in
        response, Dvorak sent McKay a lease agreement for the Danville property, representing
        that he could now obtain financing to repay McKay.

**ANSWER:**     Defendants admit that Plaintiff made a written demand for payment in January
2008 and that he sent a lease agreement for the Danville property, and denies the remaining
allegations contained in Paragraph 30 of the Complaint.

31.     On or about January 28, 2008, Dvorak represented that "we are in awesome shape,"
        reassuring McKay that the venture was liquid and profitable, that multiple banks were
        bidding on the Danville property and refinancing efforts were progressing.

**ANSWER:**     Defendants are without knowledge or information sufficient to forma a belief as
to the truth of the remaining allegations contained in Paragraph 31 of the Complaint, except to
state that in January 28, 2008 Defendant Dvorak was working with multiple banks to refinance
the Danville property.

32.     On August 9, 2008, McKay first discovered that Dvorak's prior representation that
        McKay's $1.5 million investment was secured by a first mortgage on the Danville
        property was false. McKay obtained information from the county recorder of deeds
        indicating that the recorded mortgage Dvorak had previously sent McKay was a false and
        forged document. McKay demanded the original recorded document from Dvorak but
        Dvorak never provided it.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in the first and second sentences of Paragraph 32 of the Complaint, and therefore deny them.  Further answering, Defendant admits that Plaintiff requested the original recorded document, state that neither of them had the original recorded document in their possession, and therefore were unable to send it.

33.     Instead of providing a first mortgage to McKay, Dvorak had provided a first mortgage to Irwin Union bank, just three weeks after purportedly selling McKay a first mortgage interest in the property. Irwin Union's first mortgage interest was later taken out and replaced by a first mortgage recorded by National City bank. McKay's mortgage was never recorded.

**ANSWER:**     Defendants deny each and every allegation contained in Paragraph 33 of the Complaint.

34.     Dvorak further lied to McKay about McKay's mortgage, contending that it was in fact recorded when it never was and asserting that the false stamp was a "clerical error."

**ANSWER:**     Defendants deny each and every allegation contained in Paragraph 34 of the Complaint.

35.     When confronted with the fact that McKay's $1.5 million investment was not secured with the first mortgage as promised, Dvorak offered a second mortgage on a property in Lawrenceburg, Tennessee, that he represented was appraised at $22,800,000 and that had a first mortgage of only $10,600,000. On or about August 8, 2008, McKay decided to mitigate his losses on the $1.5 million investment by accepting the second mortgage on the Lawrenceburg property.

**ANSWER:**     Defendants admit that Plaintiff was offered a second mortgage on a property in Lawrenceburg, Tennessee which had been appraised at $22,800,000 but had a first mortgage of only $10,600,000. Further answering, Defendants are without knowledge or information sufficient to form a belief as to the Plaintiffs' reasons for his own actions and therefore deny all such allegations contained in paragraph 35 of the Complaint. Further answering, Defendants deny the remaining allegations contained in Paragraph 35 of the Complaint.

36.     Dvorak's representations regarding the value of the Lawrenceburg property were false. Dvorak represented that he had performed $4 to 5 million of work on the property which McKay learned in January 2009 was false. Approximately five months after accepting the second mortgage on Lawrenceburg, the local economic development leader informed McKay that the entire property was worth only about $4 million. The first mortgagor foreclosed on the property, resulting in a sale of the property for approximately $3 million with nothing left for McKay.

**ANSWER:**     Defendants deny each and every allegation contained in the first sentence of Paragraph 36 of the Complaint. Defendants state that between $4 and $5 million of work was performed on the Lawrenceburg property and admit that Defendant Dvorak accurately represented that fact to Plaintiff, and deny the remaining allegations contained in the second sentence of Paragraph 2 of the Complaint. Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in the third sentence of Paragraph 36 of the Complaint, and therefore deny them. Defendants deny each and every allegations contained in the fourth sentence of Paragraph 36 of the Complaint, except to state they are without knowledge or information sufficient to form a belief as to the purchase price for the Lawrenceburg property, and therefore deny any such allegations.

37.     McKay has received only $460,000 of his original $1.5 million investment, for a loss of

$1,040,000.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to

the truth or falsity of the allegations contained in the third sentence of Paragraph 36 of the

Complaint, and therefore deny them.

**Hotel Roberts**

38.     Dvorak induced McKay to invest $750,000 in Hotel Roberts. McKay initially invested

$750,000 pursuant to a note dated December 13, 2006.

**ANSWER:**     Defendants deny each and every allegation contained in Paragraph 38 of the

Complaint, except to admit that McKay invested $750,000 in Hotel Roberts pursuant to a note

dated December 13, 2006.

39.     The security for the original $750,000 investment was Dvorak's membership interest in

Historic Properties, LLC, and McKay had the right to convert his $750,000 investment

into an investment in the Pinnacle Opportunity Fund, another real estate investment

contract under discussion at that time.

**ANSWER:**     To the extent the allegations contained in Paragraph 39 of the Complaint consist

of Plaintiffs' summary and characterization of a Note, such allegations are based on a document

that is not attached to the complaint, and therefore Plaintiffs deny them. Further answering,

Further answering, Defendants deny each and every remaining allegation contained in Paragraph

39 of the Complaint, except to admit that Defendant Dvorak and Plaintiff had discussions about

another investment in Pinnacle Opportunity Fund.

40.     In late December 2006, Dvorak induced McKay to pool his $750,000 investment with

other funds up to $4 million that would be secured by a first mortgage on Hotel Roberts

in Muncie, Indiana. Dvorak represented that Hotel Roberts was appraised at $4.25 million and that there were no outstanding mortgages on that property at that time in late December 2006. All other investors except McKay and one other investor have been repaid.

**ANSWER:**     Defendants deny the allegations contained in the first and second sentences of Paragraph 40 of the Complaint, except to state Plaintiff, not Defendant Dvorak, suggested pooling Plaintiff's investment in Hotel Roberts with other funds up to $4 million to be secured by a first mortgage on Hotel Roberts, and to admit that Hotel Roberts was appraised at $4.25 million.  Further answering, Defendants state that the decision to repay all investors except McKay and one other investor was Plaintiff's own decision and therefore admit the allegations contained in the third sentence of Paragraph 40 of the Complaint.

41.     In fact, unbeknownst to McKay and contrary to Dvorak's representations, a first mortgage had already been recorded on Hotel Roberts by Farmers Bank.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 41of the Complaint, and therefore deny them.

42.     Dvorak represented to McKay on January 15, 2007, that McKay's first mortgage on Hotel Roberts would be recorded the following day.  Dvorak then sent to McKay a copy of a recorded mortgage on Hotel Roberts, representing it to be a first mortgage.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in the first sentence of Paragraph 42 of the Complaint, and therefore deny them.    Defendants admit the allegations contained in the second sentence of Paragraph 42 of the Complaint.

43.     Dvorak paid back other investors in the $4 million pool and represented that he was

tracking to take out McKay's and one other investor's total principal investment of $1.5

million in the second quarter of 2008.

**ANSWER:**     Defendants deny each and every allegation contained in Paragraph 43 of the

Complaint except to admit that the other investors in the $4 million pool were repaid and states

that such repayment was made at Plaintiff's instruction. Further answering, Defendant states that

Plaintiff and the one other investor were to be paid out of the acquisition/construction loan in

connection with the planned redevelopment of the hotel.

44.     In or about August 2008, McKay learned for the first time that, contrary to Dvorak's prior

representations, McKay did not have a first mortgage on Hotel Roberts but instead

Farmers Bank did. Dvorak represented to McKay that the Farmers Bank first mortgage

was "an accident" and that he would arrange for and provide a release of Farmers Bank's

first mortgage. On or about August 18, 2008, Dvorak sent McKay a release signed by

Farmers Bank, representing that McKay then had a first mortgage on the entire Hotel

Roberts property.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to

the truth or falsity of the allegations contained in the first sentence of Paragraph 41of the

Complaint, and therefore deny them.   Further answering, Defendants state upon learning that

Farmer's Bank held a first mortgage on the property, Defendant Dvorak informed Plaintiff that

this was an accident, that he would arrange for Farmer's Bank to provide a release of the first

mortgage, and that he in fact obtained such a release and sent it to Plaintiff.  Further answering,

Defendants state that Paragraph 44 of the Complaint is vague and ambiguous when it refers to

the "entire Hotel Roberts Property" and therefore deny any allegations related thereto.  Further

answering, Defendants deny the remaining allegations contained in Paragraph 44 of the Complaint.

45.     However, the release was only on one of approximately 30 parcels that comprised the entire Hotel Roberts property, and thus McKay had only a first mortgage on six-unit apartment attached to the hotel that was purchased for $120,000 and was later sold in 2009 for $38,000.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the allegations in Paragraph 45 concerning the date or amount of sale of the six-unit apartment building, and therefore deny them. Further answering, Defendants admit the remaining allegations contained in Paragraph 45 of the Complaint.

46.     Dvorak continued to misrepresent that McKay's mortgage interest in only one parcel was an error and that McKay should have a first mortgage on all parcels.

**ANSWER:**     Defendants deny each and every allegation contained in Paragraph 46 of the Complaint.

47.     McKay has lost his entire $750,000 investment in Hotel Roberts. The hotel is defunct, no development into apartments has occurred, and, on information and belief, Dvorak has stripped all mechanicals from the building. McKay's second mortgage interest is worthless.

**ANSWER:**     Defendants deny each and every allegation contained in Paragraph 47 of the Complaint. Further answering, Defendants state that the hotel is closed but that based on advice from Plaintiff and the other investor, the property is being converted to luxury apartments. Further answering, Defendants state that Farmer's Bank was willing to take no action on the

mortgage but that Plaintiff sued Farmers Bank and forced a foreclosure sale and auction, which Farmer's Bank won.

**Buchanan Investment**

48.     On or about November 30, 2006, McKay's wife at the time, Amy McKay, executed an investment contract with Buchanan Investment Group, LLC. Buchanan owned real estate property in Berrien County, Michigan. Dvorak induced this investment in which Amy McKay agreed to invest $180,000 in Buchanan in exchange for a share in the net profits from the efforts of Buchanan and Dvorak.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first and second sentences of Paragraph 48 of the Complaint, and therefore deny them.  Defendants deny each and every allegation contained in the third sentence of Paragraph 48 of the Complaint.

49.     Amy McKay has since assigned all of her interest in the Agreement with Buchanan to McKay.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 49 of the Complaint, and therefore deny them.

50.     Pursuant to the Buchanan Agreement, Buchanan agreed to pay the sum of $180,000 plus 17.5% of the net profits from the sale of the Berrien County property or 17.5% of the net appraised value of the property on or before May 28, 2010.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 50 of the Complaint, and therefore deny them.

51.     Buchanan has not made any such payments and is in default of the Buchanan Agreement.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to

the truth or falsity of the allegations contained in Paragraph 49 of the Complaint, and therefore

deny them.

52.     In inducing Amy McKay and McKay to invest in the Buchanan Agreement, Dvorak and

        Pinnacle made representations regarding the capital structure of the Buchanan

        investment, which Amy McKay and McKay relied upon as investors.

**ANSWER:**     Defendants deny each and every allegation contained in Paragraph 52 of the

Complaint.

53.     Defendants' representations regarding the Buchanan capital structure were false. In

        reality, Buchanan assumed much more debt than represented and diluted McKay's

        investment so that it is now worthless.

**ANSWER:**     Defendants deny each and every allegation contained in Paragraph 53 of the

Complaint.

**Installment Promissory Note**

54.     On or about December 2005, Dvorak and Pinnacle induced Amy McKay (then Amy

        Wilson) to loan $20,000 as an investment in Pinnacle, pursuant to a Note.

**ANSWER:**     Defendants deny each and every allegation contained in Paragraph 54 of the

Complaint, except to admit that Amy McKay loaned $20,000 to Pinnacle on or about December

2005.  Further answering, Defendants are without knowledge or information sufficient to form a

belief as to the truth or falsity of the allegations concerning the Note contained in Paragraph 55

of the Complaint because those allegations are based upon a document that is not attached to the

Complaint, and therefore deny them.

55.     Pinnacle and Dvorak agreed to repay the principal and interest in the amount of $16,000

        on or before December 20, 2009.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to

the truth or falsity of the allegations contained in Paragraph 55 of the Complaint because those

allegations are based upon a document that is not attached to the Complaint, and therefore deny

them.

56.     Pinnacle and Dvorak have breached their obligation to repay on the Note and are in

        default.

**ANSWER:**  Defendants deny each and every allegation contained in Paragraph 56 of the

Complaint, except to state that the Note is in default.

57.     Amy McKay has assigned all rights and interests in the Note to McKay.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to

the truth or falsity of the allegations contained in Paragraph 57 of the Complaint, and therefore

deny them.

### Misrepresentations and Omissions by Defendants

58.     Defendants made various misrepresentations and omissions in soliciting the investments

        from McKay.

**ANSWER:**     Defendants deny each and every allegation contained in Paragraph 58 of the

Complaint.

59.     Among other things, Dvorak made the following misrepresentations and omissions:

**ANSWER:**     Defendants deny each and every allegation contained in Paragraph 59 of the

Complaint, including all Sub-Paragraphs therein.

        a.      Dvorak misrepresented that he had recorded a first mortgage on the Danville

                property securing McKay's $1.5 million in Pinnacle;

**ANSWER:**    Defendants deny each and every allegation contained in Sub-Paragraph 59.a of the Complaint.

      b.      Dvorak misrepresented the value of the Danville property;

**ANSWER:**    Defendants deny each and every allegation contained in Sub-Paragraph 59.b of the Complaint.

      c.      Dvorak misrepresented that he would refinance the Danville property to pay off McKay's investment by October 27, 2007;

**ANSWER:**    Defendants deny each and every allegation contained in Sub-Paragraph 59.c of the Complaint.

      d.      Dvorak misrepresented that he had recorded a first mortgage on Hotel Roberts securing McKay's $750,000 investment in Pinnacle;

**ANSWER:**    Defendants deny each and every allegation contained in Sub-Paragraph 59.d of the Complaint.

      e.      Dvorak misrepresented that he had obtained a release from Farmers Bank with respect to its first mortgage on Hotel Roberts;

**ANSWER:**    Defendants deny each and every allegation contained in Sub-Paragraph 59.e of the Complaint.

      f.      Dvorak misrepresented that Farmers Bank's first mortgage on Hotel Roberts was a "mistake" and he "would get it fixed;"

**ANSWER:**    Defendants deny each and every allegation contained in Sub-Paragraph 59.f of the Complaint.

      g.      Dvorak misrepresented that Farmer Bank's release of mortgage was a complete release of the entire first mortgage on all of the Hotel Roberts property;

**ANSWER:**     Defendants deny each and every allegation contained in Sub-Paragraph 59.g of the Complaint.

        h.      Dvorak misrepresented that the investment in the Buchanan Investment Group would result in payment of the profits or appreciation on the Berrien County, Michigan property resulting from Dvorak's and Buchanan's efforts;

**ANSWER:**     Defendants deny each and every allegation contained in Sub-Paragraph 59.h of the Complaint.

        i.      Dvorak misrepresented the capital structure and debt amounts of the Buchanan investment;

**ANSWER:**     Defendants deny each and every allegation contained in Sub-Paragraph 59.i of the Complaint.

        j.      Dvorak misrepresented the values of the Danville, Hotel Roberts, Lawrenceburg, Berrien County properties;

**ANSWER:**     Defendants deny each and every allegation contained in Sub-Paragraph 59.j of the Complaint.

        k.      Defendants failed to disclose the first mortgages on the Danville and Hotel Roberts properties; and

**ANSWER:**     Defendants deny each and every allegation contained in Sub-Paragraph 59.k of the Complaint.

        l.      Dvorak failed to disclose that he had taken steps to dissolve Pinnacle in December 2009 without accounting to McKay and other investors for the lost investment funds.

**ANSWER:**    Defendants deny each and every allegation contained in Sub-Paragraph 59.l of the Complaint.

60.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The specific statements pleaded herein were not identified as "forward-looking statements" when made. Even if they had been so identified, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the statements. Alternatively, to the extent that the statutory safe harbor does apply to any statement pleaded herein, defendants are liable for those false statements because at the time of each of those statements were made, the particular speaker knew that the particular statement was false and/or the statement was authorized and/or approved by Dvorak or a principal of Pinnacle who knew that those statements were false when made.

**ANSWER:**    To the extent that Paragraph 60 of the Complaint contains purported conclusions of law, no response is required. Further answering, Defendants deny each and every allegation contained in Paragraph 60 of the Complaint.

### Count I - Securities Fraud (Against All Defendants)
### (Section 10b-5 of the Securities and Exchange Act of 1934 and Rule 10b-5)

61.    Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

**ANSWER:**    Defendants restate and reincorporate by reference herein their Answers to Paragraphs 1-60 of the Complaint.

62.    Count I is brought pursuant to Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. §78j(b), and Securities and Exchange Act Rule 10b-5, 15 C.F.R. §240.1b-5, against Defendants Dvorak, Pinnacle and Buchanan.

**ANSWER:**    Defendants acknowledge that Plaintiff's complaint purports to bring an action under Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. §78j(b) and Rule 10b-5 promulgated thereunder, 15 C.F.R. §240. 10b-5, but deny that Plaintiff has valid claims against Defendants under these statutes.

63.    Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 because they (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiffs in connection with their investments in Buchanan, Danville and Hotel Roberts in 2006.

**ANSWER:**    Paragraph 63 of the Complaint contains only purported conclusions of law, to which no response is required; in the event Paragraph 63 of the Complaint contains allegations requiring a response, Defendants deny each and every such allegation.

64.    Each of these misrepresentations and omissions was material in the sense that any similarly situated reasonable investor would have considered them important in deciding whether to purchase such investment contracts.

**ANSWER:**    Paragraph 64 of the Complaint contains only purported conclusions of law, to which no response is required; in the event Paragraph 64 of the Complaint contains allegations requiring a response, Defendants deny each and every such allegation.

65.    The above representations regarding the real estate properties, the security interests, capital structure and repayments were representations that would have assumed actual significance in the deliberations of a reasonable investor situated similarly to Plaintiff.

The omissions were material information that reasonable investors, including Plaintiff, would have wanted to have known and if he had known this information, he would not have invested in these investment contracts.

**ANSWER:** Paragraph 65 of the Complaint contains only purported conclusions of law, to which no response is required. Further answering, in the event Paragraph 65 of the Complaint contains allegations requiring a response, Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of those allegations, and therefore deny them.

66. Plaintiff relied upon Defendants' representations touting the value of the real estate ventures, the expected payouts on the investment contracts and the security of the first mortgages. Plaintiff's reliance was reasonable.

**ANSWER:** Paragraph 66 of the Complaint contains only purported conclusions of law, to which no response is required. Further answering, in the event Paragraph 66 of the Complaint contains allegations requiring a response, Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of those allegations, and therefore deny them.

67. The Notes are securities because they are investment contracts in which Plaintiff pooled his money and Defendants represented that Plaintiff would participate profit from the efforts of Defendants.

**ANSWER:** The allegations contained in Paragraph 67 of the Complaint are vague, ambiguous and unintelligible, and therefore Defendants deny each and every allegation contained therein. Further answering, Paragraph 67 of the Complaint appears on its face to contain only purported conclusions of law, to which no response is required; in the event Paragraph 67 of the Complaint contains allegations requiring a response, Defendants deny each and every such allegation.

68.     In effectuating the fraudulent sale of securities to Plaintiff, Defendants acted with

        scienter. Defendants either consciously or recklessly disregarded the falsity of the

        material representations in the emails and oral representations to Plaintiff regarding the

        nature and value of the investments and payoffs.

**ANSWER:**     Paragraph 68 of the Complaint contains only purported conclusions of law, to

which no response is required; in the event Paragraph 68 of the Complaint contains allegations

requiring a response, Defendants deny each and every such allegation.

69.     Defendants had both motive and opportunity to commit fraud because Defendants

        received substantial funds from Plaintiff.

**ANSWER:**     Defendants deny each and every such allegation contained in Paragraph 69 of the

Complaint.

70.     As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff suffered

        damages in connection with his purchases of the investment contracts in the various real

        estate ventures solicited and managed by Dvorak and Pinnacle.

**ANSWER:**     Paragraph 70 of the Complaint contains only purported conclusions of law, to

which no response is required; in the event Paragraph 70 of the Complaint contains allegations

requiring a response, Defendants deny each and every such allegation.

### Count II - Control Person Liability (Against Dvorak)
### (Section 20(a) of the Exchange Act)

71.     Plaintiff repeats and realleges every allegation contained above as if fully set forth herein.

**ANSWER:**     Defendants restate and reincorporate by reference herein their Answers to

Paragraphs 1-70 of the Complaint.

72.     Defendant Dvorak acted as a controlling person of Pinnacle, Danville, Historic Roberts

        and Buchanan within the meaning of Section 20(a) of the Exchange Act. By reason of his

position as a principal and owner of these entities, he had the power and authority to

cause them to engage in the wrongful conduct complained of herein. Based on this

conduct, Dvorak is liable pursuant to Section 20(a) of the Exchange Act.

**ANSWER:**     To the extent the Paragraph 72 of the Complaint contains purported conclusions

of law, no response is required.  Further answering, Defendants deny each and every allegation

contained in Paragraph 72 of the Complaint, except to admit that Defendant Dvorak was at times

the managing member of Pinnacle, Danville, Historic Roberts and Buchanan.

### Count III - Illinois Securities Law of 1953 (Against All Defendants)

73.     Plaintiff repeats and realleges every allegation contained above as if fully set forth herein.

**ANSWER:**     Defendants restate and reincorporate by reference herein their Answers to

Paragraphs 1-72 of the Complaint.

74.     This Count is brought pursuant to the Illinois Securities Law of 1953 against all

        Defendants.

**ANSWER:**     Defendants acknowledge that Plaintiff's complaint purports to bring an action

under the Illinois Securities Law of 1953, but deny that Plaintiff has valid claims against

Defendants under these statutes.

75.     Defendants prepared and disseminated false information regarding the investment

        contracts knowing or having reasonable grounds to know such representations were false

        or untrue and material as identified above.

**ANSWER:**     To the extent the Paragraph 75 of the Complaint contains purported conclusions

of law, no response is required. Further answering, Defendants deny each and every allegation

contained in Paragraph 75 of the Complaint.

76.     Each of these misrepresentations and omissions was material in the sense that any
        similarly situated reasonable investor would have considered them important in deciding
        whether to acquire an investment contract.

**ANSWER:**     Paragraph 76 of the Complaint contains only purported conclusions of law, to
which no response is required; in the event Paragraph 76 of the Complaint contains allegations
requiring a response, Defendants deny each and every such allegation.

77.     Defendants acted either with knowledge that the above alleged statements were false or
        they recklessly disregarded the falsity of these statements or the materiality of the
        omissions.

**ANSWER:**     Defendants deny each and every such allegation contained in Paragraph 77 of the
Complaint

78.     Plaintiff reasonably relied on the misrepresentations and omissions of Defendants in
        deciding to purchase the investment contracts with Defendants. Plaintiff's reliance was
        justifiable and reasonably foreseeable.

**ANSWER:**     Paragraph 78 of the Complaint contains only purported conclusions of law, to
which no response is required.  Further answering, in the event Paragraph 78 of the Complaint
contains allegations requiring a response, Defendants are without knowledge or information
sufficient to form a belief as to the truth or falsity of those allegations, and therefore deny them.

**Count IV - Common Law Fraud (Against All Defendants)**

79.     Plaintiff repeats and realleges every allegation contained above as if fully set forth herein.

**ANSWER:**     Defendants restate and reincorporate by reference herein their Answers to
Paragraphs 1-78 of the Complaint.

1889654.1                                          28

80.     Defendants prepared and disseminated false information regarding the investment

        contracts knowing or having reasonable grounds to know such representations were false

        or untrue and material as identified above.

**ANSWER:**     Defendants deny each and every allegation contained in Paragraph 80 of the

Complaint.

81.     Each of these misrepresentations and omissions was material to Plaintiff and he

        considered them important in deciding whether to invest in the various real estate

        investments.

**ANSWER:**     Paragraph 81 of the Complaint contains only purported conclusions of law, to

which no response is required.  Further answering, in the event Paragraph 81 of the Complaint

contains allegations requiring a response, Defendants are without knowledge or information

sufficient to form a belief as to the truth or falsity of those allegations, and therefore deny them.

82.     On information and belief, Defendants knew that the above alleged statements were false.

**ANSWER:**     Defendants deny each and every allegation contained in Paragraph 82 of the

Complaint.

83.     Plaintiff reasonably relied on the misrepresentations and omissions of Defendants in

        deciding to purchase the investment contracts with Defendants. Plaintiff's reliance was

        justifiable and reasonably foreseeable.

**ANSWER:**     Paragraph 83 of the Complaint contains only purported conclusions of law, to

which no response is required. Further answering, in the event Paragraph 88 of the Complaint

contains allegations requiring a response, Defendants are without knowledge or information

sufficient to form a belief as to the truth or falsity of those allegations, and therefore deny them.

84.     As a direct and proximate result of Defendants' material misrepresentations and

        omissions, Plaintiff has lost over $1.9 million.

**ANSWER:**     Paragraph 84 of the Complaint contains only purported conclusions of law, to

which no response is required; in the event Paragraph 84 of the Complaint contains allegations

requiring a response, Defendants deny each and every such allegation.

### Count V - Breach of Contract (Against All Defendants)

85.     Plaintiff repeats and realleges every allegation contained above as if fully set forth herein.

**ANSWER:**     Defendants restate and reincorporate by reference herein their Answers to

Paragraphs 1-84 of the Complaint.

86.     Defendants entered into written and oral contracts with Plaintiff and Plaintiff's

        predecessor, agreeing to make payments pursuant to the terms of those contracts. The

        contracts are the Notes and mortgages and oral promises by Dvorak to record the

        mortgages.

**ANSWER:**     The allegations contained in Paragraph 86 of the Complaint are vague, ambiguous

and unintelligible, and therefore Defendants deny each and every allegation contained therein.

87.     Plaintiff performed his obligations under the contracts.

**ANSWER:**  Paragraph 87 of the Complaint contains only purported conclusions of law, to

which no response is required; in the event Paragraph 87 of the Complaint contains allegations

requiring a response, Defendants deny each and every such allegation.

88.     Defendants have breached the contracts by failing to make the agreed-upon payments and

        by failing to file the mortgages to perfect Dvorak's interests.

**ANSWER:**     Paragraph 88 of the Complaint contains only purported conclusions of law, to

which no response is required; in the event Paragraph 88 of the Complaint contains allegations

requiring a response, Defendants deny each and every such allegation.

89.     As a direct and proximate result of Defendants' breaches, Plaintiff has suffered

substantial damages, including the finds he invested.

**ANSWER:**     Paragraph 89 of the Complaint contains only purported conclusions of law, to

which no response is required; in the event Paragraph 89 of the Complaint contains allegations

requiring a response, Defendants deny each and every such allegation.

90.     In addition, Defendants have not paid Plaintiff significant sums of interest payments due

on the Notes. The total damages suffered by Plaintiff exceed $5 million.

**ANSWER:**     Defendants deny each and every allegation contained in Paragraph 90 of the

Complaint.

WHEREFORE, Plaintiff requests that the Court enter judgment in their [*sic*] favor on all

Counts and grant him the following relief:

(a) Compensatory damages, including prejudgment interest;

(b) Attorneys fees and costs, including expert witness fees;

(c) Punitive damages; and

(d) Such further relief as may be appropriate.

**ANSWER:**     Plaintiff's request for relief contains no allegations to which any response is

required.  To the extent that any response may be required, Defendants deny each and every

allegation contained in Plaintiff's request for relief.

### AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

91.     Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

92.     Plaintiff's claims against Defendants are barred in whole or in part by the applicable

statute(s) of limitations.

### THIRD AFFIRMATIVE DEFENSE

93.       Plaintiff's claims are barred in whole or in part by the doctrines of waiver, estoppel, acquiescence, *in pari delicto* and unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

94.       Plaintiff's fraud claims must be dismissed because Plaintiff failed to plead fraud with particularity, as require by Fed R. Civ. P. 9(b).

### FIFTH AFFIRMATIVE DEFENSE

95.       Plaintiffs' claims are barred in whole or in part because Plaintiff has failed to meet the pleadings requirements of the Private Securities Litigation Reform Act of 1995.

### SIXTH AFFIRMATIVE DEFENSE

96.       Plaintiff's claims are barred because Plaintiff cannot prove reliance on any alleged misrepresentation or omission.

### SEVENTH AFFIRMATIVE DEFENSE

97.       Plaintiff's claims are barred by his own contributory and/or comparative negligence.

98.       Plaintiff's claims were caused by superseding or intervening wrongful acts by third persons or entities over whom or over which Defendants had no control or responsibility, and but for such persons' or entities' wrongful acts, Plaintiff would not have suffered the injuries and damages alleged.

### EIGHTH AFFIRMATIVE DEFENSE

99.       Defendants acted in good faith and did not directly or indirectly control or induce any wrongful acts or omissions and did no unlawful act or thing directly or indirectly through or by means of any other person

## NINTH AFFIRMATIVE DEFENSE

100.      Defendants at all times acted lawfully and in conformity with all applicable laws and/or agreements.

## TENTH AFFIRMATIVE DEFENSE

101.      Plaintiff did not rely on any of Defendants' alleged statements because Plaintiff conducted his own investigation.

## ELEVENTH AFFIRMATIVE DEFENSE

102.      Plaintiff's claims are barred by his own active and willing participation in the conduct alleged to give rise to Plaintiff's claims.

## TWELFTH AFFIRMATIVE DEFENSE

103.      Plaintiff's claims are barred because Plaintiff cannot prove reliance on any alleged misrepresentation or omission.

## EIGHTEENTH AFFIRMATIVE DEFENSE

104.      Plaintiff has not alleged or sustained any actual damages that were proximately caused by Defendants or for which Defendants may be liable.

## THIRTEENTH AFFIRMATIVE DEFENSE

105.      Assuming Plaintiff suffered damages, the existence of which damages is denied, such damages, if any, were caused by and were the result of Plaintiff's own negligence, misrepresentations, breach of duty, breach of contract, acts and/or omissions, and/or the negligence, misrepresentations, breach of duty, breach of contract, acts, omissions, and/or independent intervening actions of parties other than Defendants.

## FOURTEENTH AFFIRMATIVE DEFENSE

106.      Assuming Plaintiff suffered damages, the existence of which damages is denied, Plaintiff failed to mitigate his damages.

1889654.1                                33

## FIFTEENTH AFFIRMATIVE DEFENSE

107.    Plaintiff assumed the risk of any and all losses he may have incurred.

## SIXTEENTH AFFIRMATIVE DEFENSE

108.    Plaintiff is not entitled to attorneys' fees, interests, costs, or any other relief in either

law or equity, from Defendants under applicable law.

## SEVENTEENTH AFFIRMATIVE DEFENSE

109.    Defendants reserve the right to assert and pursue any additional defenses that may

become known through discovery or otherwise through the pendency of this action.


DATED:        March 17, 2011                    Respectfully submitted,

                                                /s/ Randall D. Lehner
                                                _____
                                                Randall D. Lehner
                                                Ulmer & Berne LLP
                                                500 West Madison Street, Suite 3600
                                                Chicago, IL 60661
                                                Tel. 312-658-6518
                                                Fax 312-658-6519
                                                rlehner@ulmer.com

                                                Attorney for Defendants Peter Dvorak and
                                                Pinnacle Properties Management Group,
                                                LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 17, 2011 a copy of the foregoing *Answer and Affirmative Defenses to Plaintiff's Complaint* was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Randall D. Lehner

_____

Randall D. Lehner

Attorney for Defendants Peter Dvorak and Pinnacle Properties Management Group, LLC

1889654
37917.00000