IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHN MCKAY,

        Plaintiff,

v.

PETER DVORAK, DANVILLE
INVESTMENT GROUP, LLC, an Indiana
Limited Liability Company, BUCHANAN
INVESTMENT GROUP, LLC, an Indiana
Limited Liability Company, HISTORIC
ROBERTS, LLC, an Indiana Limited Liability
Company; and PINNACLE PROPERTIES
MANAGEMENT GROUP, LLC, an Indiana
Limited Liability Company,

        Defendants.

No. 10 cv. 3695

Judge:  Hon. James F. Holderman
Magistrate:  Hon. Nan R. Nolan

**DEFENDANT BUCHANAN INVESTMENT GROUP, LLC'S ANSWER AND
AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT**

Defendant Buchanan Investment Group, LLC ("Buchanan"), by and through its
undersigned attorneys, and for its Answer and Affirmative Defenses to Plaintiff John McKay's
("Plaintiff") Complaint, states as follows:

<u>ALLEGATION NO. 1:</u>

This is an action for securities fraud, along with common law fraud and breach of
contract claims, arising from Dvorak's offering of investment contracts and notes in three real
estate projects and another separate note.  Defendants have engaged in securities fraud in
violation of the Securities and Exchange Act of 1934 and the Illinois Securities Law of 1953,
defrauding McKay of nearly $2 million dollars.

**ANSWER:**

Buchanan admits that Plaintiff's Complaint purports to bring an action for securities fraud, common law fraud and breach of contract but denies the remaining allegations contained in Paragraph No. 1 of the Complaint.

**ALLEGATION NO. 2:**

Dvorak solicited McKay's investment in three separate real estate projects. Dvorak misrepresented the debt incurred by and value of each of these projects.

**ANSWER:**

Buchanan is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 2 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 3:**

Dvorak also made repeated and false assurances to McKay about refinancing, valuations of the real estate, appraisals and leasing status of the real estate ventures. He further made misrepresentations regarding the payout dates for McKay's investments. Dvorak took repeated steps to conceal his fraudulent scheme.

**ANSWER:**

Buchanan is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 3 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 4:**

In reliance on Defendants' material misrepresentations and omissions, McKay made repeated purchases of investment contracts from Defendants. McKay has lost nearly $2 million with no explanation from Defendants.

**ANSWER:**

Buchanan denies that it made any material misrepresentations or omissions. Buchanan is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph No. 4 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 5:**

Accordingly, Plaintiffs seek compensatory damages for all losses caused by Defendants' fraud.

**ANSWER:**

Buchanan admits only that Plaintiff's Complaint purports to seek compensatory damages but denies that Plaintiff is entitled to any such damages.  Buchanan denies the remaining allegations contained in Paragraph No. 5 of the Complaint.

**Jurisdiction and Venue**

**ALLEGATION NO. 6:**

This action arises in part under Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. §78j(b) and Rule 10b-5 promulgated thereunder, 15 C.F.R. §240.10b-5.

**ANSWER:**

Buchanan admits only that Plaintiff's Complaint purports to bring claims pursuant to Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated thereunder, 15 C.F.R. § 240.10b-5, but denies that Plaintiff has valid claims against Buchanan under either Section 10(b) or Rule 10b-5.

**ALLEGATION NO. 7:**

This Court has subject matter jurisdiction under 28 U.S.C. §1331 pursuant to 15 U.S.C. §§77v and 78aa and applicable principles of supplemental jurisdiction pursuant to 28 U.S.C. §1367.  The state law claims in this action are so related to the federal claim that they form a part of the same case or controversy.

**ANSWER:**

Buchanan admits that this Court has subject matter jurisdiction under 28 U.S.C. § 1331 pursuant to 15 U.S.C. §§ 77v and 78aa.  Buchanan objects to the remaining allegations contained in Paragraph No. 7 to the extent they call for a legal conclusion to which no answer is required.

CHICAGO/#2186588.3

To the extent an answer is required, Buchanan denies the remaining allegations contained in

Paragraph No. 7 of the Complaint.

## ALLEGATION NO. 8:

Venue is proper in this district pursuant to 28 U.S.C. §1391 and 15 U.S.C. §78aa.  A substantial part of the events or omission giving rise to the claims occurred in this district.  All Defendants transacted business in this district, including by soliciting investments from and directing mailings to Plaintiff in this district.  All Defendants are subject to personal jurisdiction in this district.

## ANSWER:

Buchanan denies that venue is proper in this district and further denies that Buchanan

transacted business in this district.  Answering further, Buchanan denies that it is subject to

personal jurisdiction in this district.

## ALLEGATION NO. 9:

In connection with the acts and conduct alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the United States mails, and telephone and wire communications systems.

## ANSWER:

Buchanan denies the allegations contained in Paragraph No. 9 of the Complaint.

### Parties

## ALLEGATION NO. 10:

Plaintiff is an investor who purchased investment contracts in three separate real estate investment ventures from Dvorak.  Plaintiff also entered into a note agreement that Dvorak has breached.  Plaintiff is a citizen of the State of Illinois and resides in this District.

## ANSWER:

Buchanan is without knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Paragraph No. 10 of the Complaint and, therefore, denies the

same.

CHICAGO/#2186588.3

**ALLEGATION NO. 11:**

Plaintiff's former wife, Amy McKay, also purchased an investment contract from Dvorak. Plaintiff is the assignee and owner of all rights and claims previously owned by Amy McKay arising out of her investment contract purchase.

**ANSWER:**

Buchanan is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 11 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 12:**

Defendant Peter Dvorak is a citizen of the State of Indiana and resides in Bloomington, Indiana.

**ANSWER:**

Buchanan is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 12 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 13:**

Defendant Danville Investment Group, LLC, is an Indiana limited liability company. Danville's principal place of business is Bloomington, Indiana. On information and belief, Danville is managed and controlled by its member, Dvorak.

**ANSWER:**

Buchanan is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 13 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 14:**

Defendant Buchanan Investment Group, LLC, is an Indiana limited liability company. Buchanan's principal place of business is in Fishers, Indiana. On information and belief, Dvorak owns 80% of Buchanan and controls Buchanan.

**ANSWER:**

Buchanan admits that it is an Indiana limited liability company with its principal place of business in Fishers, Indiana. Buchanan denies the remaining allegations contained in Paragraph No. 14 of the Complaint.

**ALLEGATION NO. 15:**

Defendant Historic Roberts, LLC, is an Indiana limited liability company. Roberts' principal place of business is Bloomington, Indiana. On information and belief, Dvorak controls Roberts.

**ANSWER:**

Buchanan is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 15 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 16:**

Defendant Pinnacle Properties Management Group, LLC, is an Indiana limited liability company. Pinnacle's principal place of business was Bloomington, Indiana. Pinnacle filed articles of dissolution in December 2009. On information and belief, Dvorak controls Pinnacle.

**ANSWER:**

Buchanan is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 16 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 17:**

At all relevant times, Defendant Dvorak, in his capacity as principal of Danville, Buchanan and Pinnacle, dominated and controlled Defendants Danville, Buchanan and Pinnacle. Defendants knew of, condoned and benefitted from the violations alleged herein.

**ANSWER:**

Buchanan denies that it knew of, condoned or benefitted from any violations or wrongful conduct. Buchanan is without knowledge or information sufficient to form a belief as to the

CHICAGO/#2186588.3

truth of the remaining allegations contained in Paragraph No. 17 of the Complaint and, therefore, denies the same.

## Factual Background

## General Fraudulent Scheme

### ALLEGATION NO. 18:

Defendant Dvorak solicited investments by McKay commencing in or about 2006. Dvorak held himself out as a successful real estate investor and developer. Dvorak represented that his real estate investments always yielded significant positive returns.

### ANSWER:

Buchanan is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 18 of the Complaint and, therefore, denies the same.

### ALLEGATION NO. 19:

Dvorak represented that his real estate investment ventures provided concrete pay-out dates when investors could reap significant returns on their investments, profiting from his efforts to enhance the value of the real estate projects. Dvorak represented that the investments would be secured by first mortgages on valuable real estate when in fact both Danville and Hotel Roberts already had first mortgages on them. Dvorak also made representations regarding the capital structure of Buchanan when in fact at the time of McKay's investment, the project was already under water by approximately $1 million.

### ANSWER:

Buchanan is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 19 of the Complaint and, therefore, denies the same.

### ALLEGATION NO. 20:

Based on these representations, McKay began investing in ventures controlled by Dvorak in the summer of 2006. On or about November 27, 2006, Dvorak sent to McKay a copy of McKay's mortgage which purportedly secured McKay's $1.5 million investment, falsely representing that McKay's mortgage had been recorded by the Vermillion County Recorder of

Deeds. The document Dvorak sent to McKay contained a recording stamp of the Vermillion County Recorder of Deeds.

**ANSWER:**

Buchanan objects to the allegations contained in Paragraph No. 20 to the extent that the alleged mortgage referenced therein is not attached to the Complaint and, thus, Buchanan cannot admit or deny what said mortgage contains. Answering further, Buchanan is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 20 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 21:**

In or about August 2008, McKay began receiving information indicating that Defendants' representations were false. In August 2008, McKay learned that Dvorak had lied to him about McKay's security interest in a mortgage purportedly recorded to protect his investment contract and that Dvorak had provided McKay with a fraudulent and forged recorder of deeds stamp in an effort to dupe McKay into believing that McKay had a first mortgage interest that had been properly recorded to secure his investment.

**ANSWER:**

Buchanan denies that it made any false representations. Buchanan is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph No. 21 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 22:**

However, Dvorak knew that another bank had a first mortgage interest in the Danville property. Instead of recording McKay's mortgage for McKay, Dvorak apparently simply copied the very same recorder's stamp that appears on the bank's properly recorded first mortgage and affixed it to a copy of McKay's mortgage, falsely representing that McKay's mortgage had been properly recorded, purportedly perfecting McKay's security interest as first mortgagee.

**ANSWER:**

Buchanan is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 22 of the Complaint and, therefore, denies the same.

CHICAGO/#2186588.3

**ALLEGATION NO. 23:**

In fact, Dvorak never recorded nor caused McKay's mortgage to be recorded, let alone recorded as a first mortgage interest. Despite Dvorak's representations that McKay had a secured first mortgage interest, another bank had a first mortgage on the property and that bank was later taken out and replaced by another bank that properly recorded a first mortgage interest.

**ANSWER:**

Buchanan is without knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Paragraph No. 23 of the Complaint and, therefore, denies the

same.

**ALLEGATION NO. 24:**

Despite further demands of McKay, Defendants have failed to pay the investment contracts as promised and have refused to account for the lost investments.

**ANSWER:**

Buchanan denies the allegations contained in Paragraph No. 24 of the Complaint.

**ALLEGATION NO. 25:**

Defendants have engaged in a fraudulent scheme, soliciting and receiving substantial investments, commingling funds for various real estate investments and wiping out the savings of innocent investors, such as Plaintiff.

**ANSWER:**

Buchanan denies the allegations contained in Paragraph No. 25 of the Complaint.

**Plaintiff's Investments**

**The Danville Investment**

**ALLEGATION NO. 26:**

McKay first invested $1 million with Pinnacle and Dvorak, which Dvorak represented was secured by a first mortgage on a property in Danville, Illinois owned by Danville Investment Group. McKay executed a $1 million note on May 30, 2006. Dvorak represented that a first mortgage was recorded on that initial $1 million note.

**ANSWER:**

Buchanan objects to the allegations contained in Paragraph No. 26 to the extent that the alleged note referenced therein is not attached to the Complaint and, thus, Buchanan cannot admit or deny the date or terms of said note.  Answering further, Buchanan is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 26 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 27:**

On June 28, 2006, Dvorak solicited another $500,000 investment from McKay for the Danville project, replacing the $1 million note with a $1.5 million note.  Dvorak represented that his attorney would replace the previously recorded $1 million mortgage with a new first mortgage covering McKay's $1.5 million investment.

**ANSWER:**

Buchanan objects to the allegations contained in Paragraph No. 27 to the extent that the alleged note referenced therein is not attached to the Complaint and, thus, Buchanan cannot admit or deny the date or terms of said note.  Buchanan is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 27 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 28:**

At all times, Dvorak represented that the $1.5 million investment was secured by a first mortgage on the Danville property that Dvorak had recorded.  Dvorak sent a copy of the recorded mortgage to McKay on or about November 27, 2006.

**ANSWER:**

Buchanan objects to the allegations contained in Paragraph No. 28 to the extent that the alleged mortgage referenced therein is not attached to the Complaint and, thus, Buchanan cannot admit or deny the date or terms of said mortgage.  Buchanan is without knowledge or

-10-

information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 28 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 29:**

McKay invested the $1.5 million in the Danville project based on the representation that the Note was due upon seven days demand notice. In early 2007, Dvorak was unable to repay the Note and McKay delayed collection based on Dvorak's representation that he was in the process of refinancing the project with several banks and that McKay's investment would be repaid by October 27, 2007.

**ANSWER:**

Buchanan is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 29 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 30:**

In January 2008, McKay made a written demand for payment on the notes and in response, Dvorak sent McKay a lease agreement for the Danville property, representing that he could now obtain financing to repay McKay.

**ANSWER:**

Buchanan is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 30 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 31:**

On or about January 28, 2008, Dvorak represented that "we are in awesome shape," reassuring McKay that the venture was liquid and profitable, that multiple banks were bidding on the Danville property and refinancing efforts were progressing.

**ANSWER:**

Buchanan is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 31 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 32:**

On August 9, 2008, McKay first discovered that Dvorak's prior representation that McKay's $1.5 million investment was secured by a first mortgage on the Danville property was false. McKay obtained information from the county recorder of deeds indicating that the recorded mortgage Dvorak had previously sent McKay was a false and forged document. McKay demanded the original recorded document from Dvorak but Dvorak never provided it.

**ANSWER:**

Buchanan is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 32 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 33:**

Instead of providing a first mortgage to McKay, Dvorak had provided a first mortgage to Irwin Union bank, just three weeks after purportedly selling McKay a first mortgage interest in the property. Irwin Union's first mortgage interest was later taken out and replaced by a first mortgage recorded by National City bank. McKay's mortgage was never recorded.

**ANSWER:**

Buchanan is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 33 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 34:**

Dvorak further lied to McKay about McKay's mortgage, contending that it was in fact recorded when it never was and asserting that the false stamp was a "clerical error."

**ANSWER:**

Buchanan is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 34 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 35:**

When confronted with the fact that McKay's $1.5 million investment was not secured with the first mortgage as promised, Dvorak offered a second mortgage on a property in Lawrenceburg, Tennessee, that he represented was appraised at $22,800,000 and that had a first mortgage of only $10,600,000. On or about August 8, 2008, McKay decided to mitigate his losses on the $1.5 million investment by accepting the second mortgage on the Lawrenceburg property.

**ANSWER:**

Buchanan is without knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Paragraph No. 35 of the Complaint and, therefore, denies the

same.

**ALLEGATION NO. 36:**

Dvorak's representations regarding the value of the Lawrenceburg property were false. Dvorak represented that he had performed $4 to 5 million of work on the property which McKay learned in January 2009 was false. Approximately five months after accepting the second mortgage on Lawrenceburg, the local economic development leader informed McKay that the entire property was worth only about $4 million. The first mortgagor foreclosed on the property, resulting in a sale of the property for approximately $3 million with nothing left for McKay.

**ANSWER:**

Buchanan is without knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Paragraph No. 36 of the Complaint and, therefore, denies the

same.

**ALLEGATION NO. 37:**

McKay has received only $460,000 of his original $1.5 million investment, for a loss of $1,040,000.

**ANSWER:**

Buchanan is without knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Paragraph No. 37 of the Complaint and, therefore, denies the

same.

CHICAGO/#2186588.3

**Hotel Roberts**

**ALLEGATION NO. 38:**

Dvorak induced McKay to invest $750,000 in Hotel Roberts. McKay initially invested $750,000 pursuant to a note dated December 13, 2006.

**ANSWER:**

Buchanan objects to the allegations contained in Paragraph No. 38 to the extent that the alleged note referenced therein is not attached to the Complaint and, thus, Buchanan cannot admit or deny the date or terms of said note. Answering further, Buchanan is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 38 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 39:**

The security for the original $750,000 investment was Dvorak's membership interest in Historic Properties, LLC, and McKay had the right to convert his $750,000 investment into an investment in the Pinnacle Opportunity Fund, another real estate investment contract under discussion at that time.

**ANSWER:**

Buchanan is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 39 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 40:**

In late December 2006, Dvorak induced McKay to pool his $750,000 investment with other funds up to $4 million that would be secured by a first mortgage on Hotel Roberts in Muncie, Indiana. Dvorak represented that Hotel Roberts was appraised at $4.25 million and that there were no outstanding mortgages on that property at that time in late December 2006. All other investors except McKay and one other investor have been repaid.

-14-

**ANSWER:**

Buchanan is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 40 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 41:**

In fact, unbeknownst to McKay and contrary to Dvorak's representations, a first mortgage had already been recorded on Hotel Roberts by Farmers Bank.

**ANSWER:**

Buchanan is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 41 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 42:**

Dvorak represented to McKay on January 15, 2007, that McKay's first mortgage on Hotel Roberts would be recorded the following day. Dvorak then sent to McKay a copy of a recorded mortgage on Hotel Roberts, representing it to be a first mortgage.

**ANSWER:**

Buchanan is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 42 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 43:**

Dvorak paid back other investors in the $4 million pool and represented that he was tracking to take out McKay's and one other investor's total principal investment of $1.5 million in the second quarter of 2008.

CHICAGO/#2186588.3

**ANSWER:**

Buchanan is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 43 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 44:**

In or about August 2008, McKay learned for the first time that, contrary to Dvorak's prior representations, McKay did not have a first mortgage on Hotel Roberts but instead Farmers Bank did. Dvorak represented to McKay that the Farmers Bank first mortgage was "an accident" and that he would arrange for and provide a release of Farmers Bank's first mortgage. On or about August 18, 2008, Dvorak sent McKay a release signed by Farmers Bank, representing that McKay then had a first mortgage on the entire Hotel Roberts property

**ANSWER:**

Buchanan is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 44 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 45:**

However, the release was only on one of approximately 30 parcels that comprised the entire Hotel Roberts property, and thus McKay had only a first mortgage on six-unit apartment attached to the hotel that was purchased for $120,000 and was later sold in 2009 for $38,000.

**ANSWER:**

Buchanan is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 45 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 46:**

Dvorak continued to misrepresent that McKay's mortgage interest in only one parcel was an error and that McKay should have a first mortgage on all parcels.

-16-

**ANSWER:**

Buchanan is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 46 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 47:**

McKay has lost his entire $750,000 investment in Hotel Roberts. The hotel is defunct, no development into apartments has occurred, and, on information and belief, Dvorak has stripped all mechanicals from the building. McKay's second mortgage interest is worthless.

**ANSWER:**

Buchanan is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 47 of the Complaint and, therefore, denies the same.

**Buchanan Investment**

**ALLEGATION NO. 48:**

On or about November 30, 2006, McKay's wife at the time, Amy McKay, executed an investment contract with Buchanan Investment Group, LLC. Buchanan owned real estate property in Berrien County, Michigan. Dvorak induced this investment in which Amy McKay agreed to invest $180,000 in Buchanan in exchange for a share in the net profits from the efforts of Buchanan and Dvorak.

**ANSWER:**

Buchanan admits that it owns and has owned real estate property in Berrien County, Michigan. Buchanan is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph No. 48 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 49:**

Amy McKay has since assigned all of her interest in the Agreement with Buchanan to McKay.

**ANSWER:**

Buchanan objects to the allegations contained in Paragraph No. 49 to the extent that the alleged assignment referenced therein is not attached to the Complaint and, thus, Buchanan cannot admit or deny whether such an assignment exists. Answering further, Buchanan is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 49 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 50:**

Pursuant to the Buchanan Agreement, Buchanan agreed to pay the sum of $180,000 plus 17.5% of the net profits from the sale of the Berrien County property or 17.5% of the net appraised value of the property on or before May 28, 2010.

**ANSWER:**

Buchanan objects to the allegations contained in Paragraph No. 50 as vague and ambiguous to the extent the term "Buchanan Agreement" is not defined. Buchanan further objects to the allegations contained in Paragraph No. 50 to the extent that the alleged Buchanan Agreement referenced therein is not attached to the Complaint and, thus, Buchanan cannot admit or deny the date or terms of said agreement. Answering further, Buchanan is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 50 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 51:**

Buchanan has not made any such payments and is in default of the Buchanan Agreement.

**ANSWER:**

Buchanan denies the allegations contained in Paragraph No. 51 of the Complaint.

**ALLEGATION NO. 52:**

In inducing Amy McKay and McKay to invest in the Buchanan Agreement, Dvorak and Pinnacle made representations regarding the capital structure of the Buchanan investment, which Amy McKay and McKay relied upon as investors.

**ANSWER:**

Buchanan is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 52 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 53:**

Defendants' representations regarding the Buchanan capital structure were false. In reality, Buchanan assumed much more debt than represented and diluted McKay's investment so that it is now worthless.

**ANSWER:**

Buchanan denies that it made any false misrepresentations as alleged in Paragraph No. 53 of the Complaint.

**Installment Promissory Note**

**ALLEGATION NO. 54:**

On or about December 2005, Dvorak and Pinnacle induced Amy McKay (then Amy Wilson) to loan $20,000 as an investment in Pinnacle, pursuant to a Note.

**ANSWER:**

Buchanan objects to the allegations contained in Paragraph No. 54 as vague and ambiguous to the extent that the term "Note" is undefined. Buchanan further objects to the allegations contained in Paragraph No. 54 to the extent that the alleged note referenced therein is not attached to the Complaint and, thus, Buchanan cannot admit or deny the date or terms of said note. Answering further, Buchanan is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 54 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 55:**

Pinnacle and Dvorak agreed to repay the principal and interest in the amount of $16,000 on or before December 20, 2009.

**ANSWER:**

Buchanan is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 55 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 56:**

Pinnacle and Dvorak have breached their obligation to repay on the Note and are in default.

**ANSWER:**

Buchanan is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 56 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 57:**

Amy McKay has assigned all rights and interests in the Note to McKay.

**ANSWER:**

Buchanan objects to the allegations contained in Paragraph No. 57 to the extent that the alleged assignment referenced therein is not attached to the Complaint and, thus, Buchanan cannot admit or deny whether such an assignment exists. Answering further, Buchanan is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 57 of the Complaint and, therefore, denies the same.

**Misrepresentations and Omissions by Defendants**

**ALLEGATION NO. 58:**

Defendants made various misrepresentations and omissions in soliciting the investments from McKay.

**ANSWER:**

Buchanan denies that it made any misrepresentations or omissions.

**ALLEGATION NO. 59:**

Among other things, Dvorak made the following misrepresentations and omissions:

a.     Dvorak misrepresented that he had recorded a first mortgage on the Danville property securing McKay's $1.5 million in Pinnacle;

b.     Dvorak misrepresented the value of the Danville property;

c.     Dvorak misrepresented that he would refinance the Danville property to pay off McKay's investment by October 27, 2007;

d.     Dvorak misrepresented that he had recorded a first mortgage on Hotel Roberts securing McKay's $750,000 investment in Pinnacle;

e.     Dvorak misrepresented that he had obtained a release from Farmers Bank with respect to its first mortgage on Hotel Roberts;

f.     Dvorak misrepresented that Farmers Bank's first mortgage on Hotel Roberts was a "mistake" and he "would get it fixed;"

g.     Dvorak misrepresented that Farmers Bank's release of mortgage was a complete release of the entire first mortgage on all of the Hotel Roberts property;

h.     Dvorak misrepresented that the investment in the Buchanan Investment Group would result in payment of the profits or appreciation on the Berrien County, Michigan property resulting from Dvorak's and Buchanan's efforts;

i.     Dvorak misrepresented the capital structure and debt amounts of the Buchanan investment;

j.     Dvorak misrepresented the values of the Danville, Hotel Roberts, Lawrenceburg, Berrien County properties;

k.     Defendants failed to disclose the first mortgages on the Danville and Hotel Roberts properties; and

l.     Dvorak failed to disclose that he had taken steps to dissolve Pinnacle in December 2009 without accounting to McKay and other investors for the lost investment funds.

**ANSWER:**

Buchanan denies that it made any misrepresentations or omissions. Buchanan is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph No. 59 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 60:**

The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The specific statements pleaded herein were not identified as "forward-looking statements" when made. Even if they had been so identified, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the statements. Alternatively, to the extent that the statutory safe harbor does apply to any statement pleaded herein, defendants are liable for those false statements because at the time of each of those statements were made, the particular speaker knew that the particular statement was false and/or the statement was authorized and/or approved by Dvorak or a principal of Pinnacle who knew that those statements were false when made.

**ANSWER:**

Buchanan objects to the allegations contained in Paragraph No. 60 to the extent they call

for a legal conclusion to which no answer is required. To the extent an answer is required,

Buchanan denies the allegations contained in Paragraph No. 60 of the Complaint.

### Count I — Securities Fraud (Against All Defendants)

### (Section 10b-5 of the Securities and Exchange Act of 1934 and Rule 10b-5)

**ALLEGATION NO. 61:**

Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

**ANSWER:**

Buchanan repeats and reasserts its answers to each and every allegation above as if fully

set forth herein.

**ALLEGATION NO. 62:**

Count I is brought pursuant to Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. §78j(b), and Securities and Exchange Act Rule 10b-5, 15 C.F.R. §240.1b-5, against Defendants Dvorak, Pinnacle and Buchanan.

**ANSWER:**

Buchanan admits only that Count I of Plaintiff's Complaint purports to be brought

pursuant to Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78k(b), and

Securities Exchange Act Rule 10b-5, 15 C.F.R. § 240.1b-5 but denies that Plaintiff has valid

claims against Buchanan under either Section 10(b) or Rule 10b-5. Answering further,

Buchanan states that Count I purports to be brought against all Defendants.

## ALLEGATION NO. 63:

Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 because they (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiffs in connection with their investments in Buchanan, Danville and Hotel Roberts in 2006.

## ANSWER:

Buchanan denies the allegations contained in Paragraph No. 63 of the Complaint.

## ALLEGATION NO. 64:

Each of these misrepresentations and omissions was material in the sense that any similarly situated reasonable investor would have considered them important in deciding whether to purchase such investment contracts.

## ANSWER:

Buchanan denies the allegations contained in Paragraph No. 64 of the Complaint.

## ALLEGATION NO. 65:

The above representations regarding the real estate properties, the security interests, capital structure and repayments were representations that would have assumed actual significance in the deliberations of a reasonable investor situated similarly to Plaintiff. The omissions were material information that reasonable investors, including Plaintiff, would have wanted to have known and if he had known this information, he would not have invested in these investment contracts.

## ANSWER:

Buchanan objects to the allegations contained in Paragraph No. 65 to the extent they call

for a legal conclusion to which no answer is required. To the extent an answer is required,

Buchanan denies the allegations contained in Paragraph No. 65 of the Complaint.

**ALLEGATION NO. 66:**

Plaintiff relied upon Defendants' representations touting the value of the real estate ventures, the expected payouts on the investment contracts and the security of the first mortgages. Plaintiff's reliance was reasonable.

**ANSWER:**

Buchanan objects to the allegations contained in Paragraph No. 66 to the extent they call

for a legal conclusion to which no answer is required. To the extent an answer is required,

Buchanan is without knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph No. 66 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 67:**

The Notes are securities because they are investment contracts in which Plaintiff pooled his money and Defendants represented that Plaintiff would participate profit from the efforts of Defendants.

**ANSWER:**

Buchanan objects to the allegations contained in Paragraph No. 67 to the extent they call

for a legal conclusion to which no answer is required. To the extent an answer is required,

Buchanan is without knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph No. 67 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 68:**

In effectuating the fraudulent sale of securities to Plaintiff, Defendants acted with scienter. Defendants either consciously or recklessly disregarded the falsity of the material representations in the emails and oral representations to Plaintiff regarding the nature and value of the investments and payoffs.

**ANSWER:**

Buchanan denies the allegations contained in Paragraph No. 68 of the Complaint.

**ALLEGATION NO. 69:**

Defendants had both motive and opportunity to commit fraud because Defendants received substantial funds from Plaintiff.

**ANSWER:**

Buchanan denies the allegations contained in Paragraph No. 69 of the Complaint.

**ALLEGATION NO. 70:**

As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff suffered damages in connection with his purchases of the investment contracts in the various real estate ventures solicited and managed by Dvorak and Pinnacle.

**ANSWER:**

Buchanan denies the allegations contained in Paragraph No. 70 of the Complaint.

### Count II — Control Person Liability (Against Dvorak)

### (Section 20(a) of the Exchange Act)

**ALLEGATION NO. 71:**

Plaintiff repeats and realleges every allegation contained above as if fully set forth herein.

**ANSWER:**

Buchanan repeats and reasserts its answers to each and every allegation above as if fully

set forth herein.

**ALLEGATION NO. 72:**

Defendant Dvorak acted as a controlling person of Pinnacle, Danville, Historic Roberts and Buchanan within the meaning of Section 20(a) of the Exchange Act.  By reason of his position as a principal and owner of these entities, he had the power and authority to cause them to engage in the wrongful conduct complained of herein.  Based on this conduct, Dvorak is liable pursuant to Section 20(a) of the Exchange Act.

**ANSWER:**

This Count is not brought against Buchanan and, therefore, Buchanan makes no answer

to the same.

### Count III — Illinois Securities Law of 1953 (Against All Defendants)

**ALLEGATION NO. 73:**

Plaintiff repeats and realleges every allegation contained above as if fully set forth herein.

**ANSWER:**

Buchanan repeats and reasserts its answers to each and every allegation above as if fully set forth herein.

**ALLEGATION NO. 74:**

This Count is brought pursuant to the Illinois Securities Law of 1953 against all Defendants.

**ANSWER:**

Buchanan admits only that Count III of Plaintiff's Complaint purports to be brought pursuant to the Illinois Securities Law of 1953 against all Defendants but denies that Plaintiff has a valid claim against Buchanan pursuant to the Illinois Securities Law of 1953.

**ALLEGATION NO. 75:**

Defendants prepared and disseminated false information regarding the investment contracts knowing or having reasonable grounds to know such representations were false or untrue and material as identified above.

**ANSWER:**

Buchanan denies the allegations contained in Paragraph No. 75 of the Complaint.

**ALLEGATION NO. 76:**

Each of these misrepresentations and omissions was material in the sense that any similarly situated reasonable investor would have considered them important in deciding whether to acquire an investment contract.

**ANSWER:**

Buchanan objects to the allegations contained in Paragraph No. 76 to the extent they call for a legal conclusion to which no answer is required. To the extent an answer is required, Buchanan denies the allegations contained in Paragraph No. 76 of the Complaint.

**ALLEGATION NO. 77:**

Defendants acted either with knowledge that the above alleged statements were false or they recklessly disregarded the falsity of these statements or the materiality of the omissions.

**ANSWER:**

Buchanan denies the allegations contained in Paragraph No. 77 of the Complaint.

**ALLEGATION NO. 78:**

Plaintiff reasonably relied on the misrepresentations and omissions of Defendants in deciding to purchase the investment contracts with Defendants. Plaintiff's reliance was justifiable and reasonably foreseeable.

**ANSWER:**

Buchanan denies the allegations contained in Paragraph No. 78 of the Complaint.

### Count IV — Common Law Fraud (Against All Defendants)

**ALLEGATION NO. 79:**

Plaintiff repeats and realleges every allegation contained above as if fully set forth herein.

**ANSWER:**

Buchanan repeats and reasserts its answers to each and every allegation above as if fully

set forth herein.

**ALLEGATION NO. 80:**

Defendants prepared and disseminated false information regarding the investment contracts knowing or having reasonable grounds to know such representations were false or untrue and material as identified above.

**ANSWER:**

Buchanan denies the allegations contained in Paragraph No. 80 of the Complaint.

**ALLEGATION NO. 81:**

Each of these misrepresentations and omissions was material to Plaintiff and he considered them important in deciding whether to invest in the various real estate investments.

**ANSWER:**

Buchanan denies the allegations contained in Paragraph No. 81 of the Complaint.

**ALLEGATION NO. 82:**

On information and belief, Defendants knew that the above alleged statements were false.

**ANSWER:**

Buchanan denies the allegations contained in Paragraph No. 82 of the Complaint.

**ALLEGATION NO. 83:**

Plaintiff reasonably relied on the misrepresentations and omissions of Defendants in deciding to purchase the investment contracts with Defendants. Plaintiff's reliance was justifiable and reasonably foreseeable.

**ANSWER:**

Buchanan denies the allegations contained in Paragraph No. 83 of the Complaint.

**ALLEGATION NO. 84:**

As a direct and proximate result of Defendants' material misrepresentations and omissions, Plaintiff has lost over $1.9 million.

**ANSWER:**

Buchanan denies the allegations contained in Paragraph No. 84 of the Complaint.

### Count V — Breach of Contract (Against All Defendants)

**ALLEGATION NO. 85:**

Plaintiff repeats and realleges every allegation contained above as if fully set forth herein.

**ANSWER:**

Buchanan repeats and reasserts its answers to each and every allegation above as if fully

set forth herein.

**ALLEGATION NO. 86:**

Defendants entered into written and oral contracts with Plaintiff and Plaintiff's predecessor, agreeing to make payments pursuant to the terms of those contracts. The contracts are the Notes and mortgages and oral promises by Dvorak to record the mortgages.

**ANSWER:**

Buchanan is without knowledge or information sufficient to form a belief as to the

existence of any alleged written or oral contracts of any kind, whether authorized or

unauthorized, entered into between Plaintiff or Plaintiff's predecessor and any of the defendants in this case and, therefore, denies the allegations contained Paragraph No. 86 of the Complaint.

**ALLEGATION NO. 87:**

Plaintiff performed his obligations under the contracts.

**ANSWER:**

Buchanan is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 87 of the Complaint and, therefore, denies the same.

**ALLEGATION NO. 88:**

Defendants have breached the contracts by failing to make the agreed-upon payments and by failing to file the mortgages to perfect Dvorak's interests.

**ANSWER:**

Buchanan objects to the allegations contained in Paragraph No. 88 to the extent that the alleged contracts referenced therein are not attached to the Complaint and, thus, Buchanan cannot admit or deny whether such alleged contracts exist.  Answering further, Buchanan denies the allegations contained in Paragraph No. 88 of the Complaint.

**ALLEGATION NO. 89:**

As a direct and proximate result of Defendants' breaches, Plaintiff has suffered substantial damages, including the funds he invested.

**ANSWER:**

Buchanan denies the allegations contained in Paragraph No. 89 of the Complaint.

**ALLEGATION NO. 90:**

In addition, Defendants have not paid Plaintiff significant sums of interest payments due on the Notes.  The total damages suffered by Plaintiff exceed $5 million.

**ANSWER:**

Buchanan objects to the allegations contained in Paragraph No. 90 as vague and ambiguous to the extent that the term "Notes" is undefined. Buchanan further objects to the allegations contained in Paragraph No. 90 to the extent that the alleged notes referenced therein are not attached to the Complaint and, thus, Buchanan cannot admit or deny whether such alleged notes exist. Answering further, Buchanan denies the allegations contained in Paragraph No. 90 of the Complaint.

**AFFIRMATIVE DEFENSES**

Buchanan asserts the following affirmative defenses to Plaintiff's Complaint and specifically reserves its right to amend or add to these affirmative defenses at an appropriate time in the future. Accordingly, without prejudice to its denials of the allegations in Plaintiff's Complaint, without waiver of Plaintiff's obligations to prove each and every element of his claims against Buchanan, and, pleading in the alternative, Buchanan, for its Affirmative Defenses, states as follows:

**FIRST AFFIRMATIVE DEFENSE**

1.      Plaintiff failed to use reasonable care to protect his own interests, and this failure caused or contributed to, in whole or in part, any damages that Plaintiff may have incurred.

2.      Thus, Plaintiff's claims are barred, in whole or in part, by his own contributory negligence.

**SECOND AFFIRMATIVE DEFENSE**

3.      Plaintiff's damages, if any, were the result of superseding and intervening causes, or the conduct of third persons, over which Buchanan had not control.

-30-

### THIRD AFFIRMATIVE DEFENSE

4. Plaintiff has failed to state claims against Buchanan for securities fraud and/or common law fraud insofar as Plaintiff has failed to plead with particularity specific facts which would support the conclusion that Buchanan made any material misstatements of fact or omission, that Buchanan intended Plaintiff to rely upon such material misstatements or omissions, that Plaintiff did rely upon such misstatements or omissions or that any such reliance was reasonable.

### FOURTH AFFIRMATIVE DEFENSE

5. Plaintiff's claims are barred, in whole or in part, by potentially applicable statutes of limitations.

### FIFTH AFFIRMATIVE DEFENSE

6. Plaintiff's claims are barred, in whole or in part, by the equitable doctrines of laches, waiver and/or estoppel insofar as Plaintiff, on information and belief, knew or should have known, by actual or constructive notice, of Peter Dvorak's alleged wrongful and fraudulent conduct, yet Plaintiff knowingly and consciously failed to raise any objections to such conduct, or to take such other reasonable and appropriate measures to protect his purported interests.

### SIXTH AFFIRMATIVE DEFENSE

7. Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to mitigate his damages, if any.

### EIGHTH AFFIRMATIVE DEFENSE

8. Plaintiff's claims are barred, in whole or in part, because Plaintiff assumed the risk of any and all losses he may have incurred.

CHICAGO/#2186588.3

9.     Buchanan will rely on any and all defenses lawfully available to it at the time of trial and reserves the right to amend and/or supplement these Affirmative Defenses to include additional defenses that may become known through discovery or otherwise throughout the pendency of this action.


Dated:  April 21, 2011                          Respectfully submitted,

                                                BUCHANAN INVESTMENT GROUP, LLC,

                                                By:   s/ Randall M. Lending
                                                      One of Its Attorneys

Randall M. Lending
Rebecca L. Dandy
Vedder Price P.C.
222 North LaSalle Street, Suite 2600
Chicago, Illinois  60601-1003
T: (312) 609-7500
F: (312) 609-5005

## CERTIFICATE OF SERVICE

The hereby certify that I electronically filed the foregoing **Defendant Buchanan Investment Group, LLC's Answer and Affirmative Defenses to Plaintiff's Complaint** with the Clerk of the Court using the CM/ECF system which will send notifications of such filing to the following:

Nancy A. Temple               Randall D. Lehner
Katten & Temple LLP        Ulmer & Berne LLP
542 S. Dearborn St., Suite 1060   500 West Madison Street, Ste. 3600
Chicago, IL 60605           Chicago, IL 60661

On  April 21, 2011.

                                  s/ Randall M. Lending